**UNITED STATES of America,**
**Plaintiff,**

v.

**Varsha Mahender SABHNANI**
**and Mahender Murlidhar**
**Sabhnani, Defendants.**

**No. 07–CR–429 (ADS)(WDW).**

United States District Court,
E.D. New York.

Oct. 20, 2008.

Scaring & Brissenden, PLLC, by Stephen P. Scaring, Esq., Matthew W. Brissenden, Esq., of Counsel, Garden City, NY, Dershowitz, Eiger & Adelson, P.C., by Alan M. Dershowitz, Esq., of Counsel, New York, NY, for Mahender Sabhnani.

Benton J. Campbell, United States Attorney, Eastern District of New York, by Mark J. Lesko, Assistant United States Attorney, Demetri M. Jones, Assistant United States Attorney, Central Islip, NY, for United States of America.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

### I. BACKGROUND

Presently before the Court is the motion by the Defendant Mahender Sabhnani ("Sabhnani" or "the Defendant") for bail pending appeal and his motion for a modification of his current bail conditions. The Court assumes the parties' familiarity with the underlying facts and procedural history of this case.

### II. DISCUSSION

#### A. Legal Standard

■ The standard governing whether a court should grant a motion for release of a convicted defendant pending an appeal is set forth in 18 U.S.C. § 3143(b). "The statute distinguishes between two categories of crimes to determine eligibility for release." *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir.1991). Where a defendant has not been convicted of a crime enumerated in § 3142(f)(1)(A), (B), or (C), release is appropriate if the court finds that certain conditions are satisfied. *Id.*; *see United States v. Randell*, 761 F.2d 122, 124 (2d Cir.1985) (observing that in order to be released pending appeal under 3143(b)(1), a defendant must show that he is not a flight risk or danger to the community and that his appeal raises a substantial question of law or fact).

However, § 3143(b)(2) *mandates* detention for persons found guilty of one of the crimes listed in § 3142(f)(1)(A), (B), and (C) including, among other things, "crimes of violence". *DiSomma*, 951 F.2d at 496. A "crime of violence" is defined in 18 U.S.C. § 3156(a)(4) as:

> (A) an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 3156(a)(4).

■ While 3143(b)(2) compels detention for defendants convicted of a violent crime, "an exception permits release of mandatory detainees who meet the requirements for release under section 3143(b)(1), *and* if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." *See DiSomma*, 951 F.2d at 496 (citing 18 U.S.C. § 3145(c)) (emphasis added). Although § 3145(c) understandably does not define what constitutes "exceptional reasons," the Second Circuit has interpreted the phrase to mean a "unique combination of circumstances giving rise to situations that are out of the ordinary." *DiSomma*, 951 F.2d at 497.

#### B. As to the Defendant's Motion for Release Pending Appeal

■ On December 17, 2007, a jury convicted this Defendant of, among other crimes, forced labor and conspiracy to

commit forced labor. With respect to the forced labor convictions, the verdict sheet clearly reveals that the jury determined that Sabhnani used "threats of serious harm or physical restraint" and "a scheme, plan, or pattern intended" to cause both victims, Samirah and Enung, to believe that nonperformance of their duties would result in serious harm.

Thus, this Court finds that Sabhnani's convictions for forced labor were "crimes of violence" within the meaning of 18 U.S.C. § 3142(f)(1)(A). Accordingly, 18 U.S.C. § 3143(b)(2) mandates Sabhnani's detention unless he can meet the two requirements for release under section 3143(b)(1), *and* he can clearly show that there are exceptional reasons why his detention would not be appropriate. *DiSomma,* 951 F.2d at 496 (citing 18 U.S.C. § 3145(c)).

With respect to the first 3143(b)(1) factor, it is clear that Sabhnani does not represent a flight risk or a danger to his community. Sabhnani's bail is secured by $3.4 million in posted assets, and his well-established business, four children, and incarcerated wife are all in the United States. It is unlikely that someone with so much to lose would violate his bail conditions in the face of a forty month sentence.

To satisfy the second 3143(b) factor, Sabhnani must show that his appeal presents "a close question or one that very well could be decided the other way." *Randell,* 761 F.2d at 125. Here, Sabhnani asserts five grounds for appeal. The Court has considered each of these arguments and finds that only one merits a discussion as to whether it presents a "close question" on appeal. Sabhnani argues that "the District Court erred in instructing the jury it could convict [him] as an aider and abettor based upon his failure to act." The relevant jury charge provides:

In order to aid or abet another to commit a crime, it is necessary that the defendant wilfully and knowingly associate herself or himself in some way with the crime and that she or he wilfully and knowingly seek by some act to help make the crime succeed.

Participation in a crime is willful if action is taken voluntarily and intentionally or in the case of failure to act with the specific intent to do something the law requires to be done, that is to say, with a bad purpose either to disobey or to disregard the law.

The Second Circuit has, on a number of occasions, countenanced this formulation of aiding and abetting liability. In *United States v. Zambrano,* the Second Circuit found that to "convict a defendant of aiding and abetting the government must prove (1) commission of the underlying crime, (2) by a person other than the defendant, (3) a voluntary act *or omission* by the person charged as an aider or abettor, with (4) the specific intent that his act or omission bring about the underlying crime." 776 F.2d 1091, 1097 (2d Cir.1985) (citing *United States v. Perry,* 643 F.2d 38, 46 (2d Cir.1981)) (emphasis added); *United States v. Amiel,* 95 F.3d 135, 142 n. 4 (2d Cir.1996) (citing the same formulation of aiding and abetting liability); *United States v. Watts,* 89 F.3d 826 (2d Cir.1995) (same); *United States v. Scotti,* 47 F.3d 1237, 1246 (2d Cir.1995) (noting that the District Court's charge "flawlessly recounted" the elements of aiding and abetting).

With respect to proving elements (3) and (4) as set forth above, the Court noted the "evidence must demonstrate that the person charged joined the venture, shared in it, and that his efforts contributed towards its success." *Zambrano,* 776 F.2d at 1097 (citing *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938)). The Court is unaware of any Second Circuit case where a defendant was found guilty of aiding and

abetting solely upon a failure to act theory. However, the fact that Defendant was convicted on such a theory is a reflection of the unusual nature of this case, not the infirmity of this long accepted formulation of aiding and abetting liability.

Moreover, even though the Court is unaware of any such reported cases within the Second Circuit, the Fourth Circuit has affirmed a jury finding of serious bodily injury with facts similar to those in the instant case on a failure to act theory. *See United States v. Bonetti*, 277 F.3d 441, 449 (4th Cir.2002). In *Bonetti*, a married couple was accused of enslaving a domestic servant in their home for fourteen years. In addition to forcing the victim to work long hours without pay, the Bonettis, among other things, padlocked the refrigerator preventing her from eating, and forbade her from using their showers.

Mrs. Bonetti also physically abused the victim on a regular basis. Though Mr. Bonetti never physically abused the victim, he failed to stop his wife from doing so and neglected to provide the victim with medical attention for a serious infection and a uterine fibroid. On appeal, Mr. Bonetti claimed, among other things, that the jury erred in finding that he caused serious bodily injury to the victim. The Court found that, under the "extraordinary facts" of the case, Mr. Bonetti had a "legal duty to help [the victim] get prompt medical care." *Id.* at 447.

As the Court explained, the victim "lived under the same roof as [Mr Bonetti] for almost fifteen years, and her illegal status, illiteracy, ignorance of English, and lack of money rendered her completely dependent upon [Mr. Bonetti] for her well-being and survival." *Id.* The Court also emphasized that Mr. Bonetti "created a circumstance of forced dependency by the victim through his own conduct of retaining [the victim's] passport in his possession, refusing to renew her visa after it expired, and

refusing to pay her for her work." *Id.* at 448. Accordingly, the *Bonetti* Court upheld the jury's finding of serious bodily injury in connection with the defendant's harboring convictions.

*Bonetti* represents some authority for the proposition that a failure to act jury charge was proper in the instant case. When considered in tandem with the fact that the Second Circuit has endorsed the aiding and abetting liability formulation presented to the jury in this case, it is unlikely that the Defendant's argument will raise a "close question" on appeal. However, even if Sabhnani could show that his appeal raises a substantial question of law, it is clear that he can not demonstrate exceptional reasons justifying his release pending appeal.

In an Order dated December 27, 2007, this Court granted Sabhnani's motion for release pending his sentencing. *United States v. Sabhnani*, 529 F.Supp.2d 377, 383 (E.D.N.Y.2007). In doing so, the Court observed that even though the jury had convicted Sabhnani for a "crime of violence," there were nonetheless "exceptional circumstances" justifying his release. Specifically, the Court found that:

> Mahender should be permitted time to arrange for the affairs of the business, as well as the family's financial affairs, for the benefit of the Sabhnani's four children. In addition, Varsha's concern regarding care for the children, especially the one child who is still in high school, as well as emotional support for all of the children, can be properly addressed by Mahender's presence at home *over the next few months.*

*Sabhnani*, 529 F.Supp.2d at 383 (emphasis added).

However, in the Court's view, the exceptional circumstances justifying Sabhnani's release pending his sentencing no longer exist. Sabhnani has had ten months to get

his business affairs and the family's financial affairs in order. Moreover, Sabhnani's then high-school aged son, Rahul, is now a freshman at George Washington University in Washington, D.C. *See United States v. Lippold,* 175 F.Supp.2d 537 (S.D.N.Y. 2001) (finding that defendant's need to care for employment responsibilities and three young children, including a seven-month old with Bell's Palsy, were not "exceptional reasons" warranting release pending sentencing).

Sabhnani's incarceration pending his appeal will undoubtedly have an impact upon his family and business. Incarceration almost always causes discomfort, inconvenience, and hardship to the family. However, as the United States Sentencing Commission has observed, "the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration." *See* U.S. Sentencing Guidelines Manual § 5H1.6 cmt. n. 1(B)(ii). Here, the harm articulated by Sabhnani is not materially different from the harm suffered by any other incarcerated defendant with a family and a business.

### C. As to the Modification of Bail Conditions

Sabhnani has also requested that the Court modify his bail conditions by eliminating the in-house monitoring by Stroz Friedberg LLC ("Stroz Friedberg"). However, the Court has denied the Defendant's motion for release pending his appeal and given that his surrender date is only nine days away on October 30th, the Court will not eliminate Stroz Friedberg's in-house monitoring at this juncture.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the Defendant's motion for release pending his appeal is *DE-NIED,* and it is further

**ORDERED,** that the Defendant's motion for modification of his bail conditions is *DENIED.*

**SO ORDERED.**